Good morning, Your Honor. May it please the Court, I am the attorney for Petitioner Pin Yang in this case. This is a case which, frankly, the issues come down to whether the immigration judge and the Board of Immigration erred in denying her Falun Gong claims based on discretionary grounds, as well as making it a frivolous claim. The Court, the immigration judge and the Board of Immigration, based the adverse credibility and the frivolous finding on the fact that she initially stated she was married to her former husband and then at the immigration. Was that the all of it? I mean, it seems that, yes, she did that, and then when in the testimony before the IJ, she lied repeatedly, serially, about everything connected to that until they came up with a document disproving her, i.e., did you come to the United States with your husband in 2000? No, I didn't. Then ultimately, yes, I did. Did you live with your husband at Alhambra? No, I didn't. Ultimately, yes, I did. Did you live – are you living with him here? No, I'm not. Ultimately, yes, I am. Or at least the IJ concluded that she was. So it wasn't simply that she lied on her application. It's that she was continuing to lie repeatedly and serially until she was caught up with some irrefutable document. That's correct, Your Honor, and – but, you know, I would come back to the issue itself, which is her marital status. Well, it isn't really her marriage status. I mean, ultimately what it really is is whether she and her husband were in a larger scheme by which one of them was going to claim they were married and the other was going to claim they were divorced and they were each going to try, by some scheme, to first get permanent status and then petition for the other. Well, I think the Respondent even stated, or the Petitioner stated in her testimony, that the reason that she initially did this was to reunite her family, to get her children over here and also to reunite her husband. But how doesn't that just take away from the – it just totally erodes on everything else in terms of why she wants asylum, because she clearly, after lying many times and ultimately getting caught, she admits that she lied about her marital status so that she could petition for her family. Why wasn't the IJ justified in saying, you know, hey, that – you know, I can't believe this claim because I know what your and it just seems like the classic situation that – I mean, it just, you know, it drives a stake right in the heart of the claim. I think – and both the immigration judge and the board have relied on that to say that her motive was changed because of the fact that she did not – was not truthful about her marital status. But at the same time, she does have a motive of leaving China for the purpose of escaping persecution. And I don't think it detracts from that, nor does it contradict it. She wants to leave China to escape persecution. At the same time she wants to escape, she would like to have her family come with her. You know, it could go either way. I don't think the right – Well, but you could say all that without lying about your marital status and having dual petitions going on and one trying to claim one and another and admitting what she admitted. Correct. Correct. So, I mean, had she not brought any of that in, yes, a person could have a dual motive. Yeah, I'd like to get my family here, but I was also persecuted. But, unfortunately, for your position, you know, she told this lie a whole bunch of times and then ultimately admitted, you know, her whole motive behind the petition was to, you know, to get a result and the end justifies the means, I guess. I would assume, Your Honors, you would agree with me that she was certainly ill-advised in the beginning when she was filling out the filing. Well, but, you know, but, you know, one of the things about telling the truth, you know, once kids hit about 5, they know the difference between a truth and a lie. So being ill-advised and your attorney saying, well, you need to lie about this, you know, that's not something I think that's, you know, I would like to think that a court's never going to allow someone to hide behind that. Just my attorney told me to lie, so that's why I lied. Well, and I don't know whether she was represented. I'm not sure the record is clear as to whether she was represented or advised by an attorney or whether it was someone else or nobody else. But she did prior to testifying. But you're taking the position if someone told her to lie, she would just have to come and lie, that that's, that you have to follow. When someone tells you to lie, you have to come and lie in court even though you take an oath? But, well, no, Your Honor. I think the question is, you know, with regard to her merit status and what happened, she, before she even testified, changed the application, admitted openly that she had, in fact, lied about her merit status. And prior to her even being sworn under oath or being advised by the judge, she said, I am divorced. And so I think that, to some extent, she should be given credit for, as opposed to, you know. Well, it seems to me that she admitted she lied each time when she saw that she was confronted with documentation that eroded on her story. But at the same time, I'm not sure there, I don't think the record shows exactly how involved she was in her husband's scheme or whether she knew. Well, she was living with him the whole time. I don't know if she admitted it was the whole time. I think there were, I think her testimony was that the marriage wasn't working and he was staying with her or getting mail with her. I don't know that that was clear as to, again, exactly what her role is in his scheme. Well, why don't you speak to the frivolousness? There's a recent case from our Court, Kotka v. Holder, that seems to throw you a little bit of a lifeline on the frivolousness with a lying client. What's your position on that? I think with the frivolous finding, we're looking at whether it's a material element, you know, it's a material factor in her case. And I don't think that, given the seriousness of finding, of a frivolous finding and that it bars her forever, if we get to the situation where ---- If she lied about her marital status, is that a material element of the claim that she was persecuted on account of religion? No. In other words, one might infer sufficiently to find her not credible that it did go sufficiently to the heart of the claim by inference, but she still wasn't directly lying about an element of her asylum claim. Exactly. And we did get a ---- it gets into the dual motive again of why she came here from China, but if you look at the---- Well, look, it's ---- you only have to answer the question of whether it's a material element of the claim. Then we can get on to some of the other problems. Correct. It is not a material element. All right. What about the discretionary---- It wasn't the case that threw you a lifeline. It was Judge Callahan that threw you a lifeline. What about the discretionary denial, if ---- which both the BIA, the IJ and the BIA said, well, even if we were to say she was eligible on the Falun Gong basis, we would still deny her discretion, asylum as a matter of discretion? Correct. And it's a matter of weighing all of the factors. And I guess some of the positive factors with regard to the Petitioner is the fact that she admitted prior to testifying that she had made a false statement in her asylum application. She amended her petition prior to testifying. Well, isn't there substantial confusion as to even now whether she's telling the truth or whether she really was married all along? To me, it's extremely unclear that she is now telling the truth, as opposed to that she was in fact married all along. If she's still married, for example, in fact, the record isn't clear as to whether or not the divorce petition, which was admitted in evidence---- Right. So it isn't so clear that she's now telling the truth. Or that she was telling the truth all along until the trial when she said she was not married. I don't know that that---- But aside from the asylum claim here, is there also withholding and cat claims? Yes, there are. So the discretionary denial of asylum would not resolve the case? That's what we would argue, Your Honor, yes. And I think based on the court, the immigration judge's own finding that the Fallon Golan claim in and of itself not only was uncontradicted, but that there is harm that is available, that is there for Fallon Golan practitioners in China. It was uncontradicted because it wasn't actually ever gone into. Essentially, it was, everything was cut short. Cross-examination, I think, was two questions correct. And the documents that she submitted in support of her claim were not admitted. Now, you're not complaining about the non-admission of the documents. Well, we, in our brief, we do say the judge should have admitted those, but it's not a real ID act, but that she did submit these additional documents which were not considered---- I'm sorry. I'm not hearing you. Which were not, she submitted these documents which were not considered by the court. But the court never made---- But did you complain to the BIA about that decision not to admit the documents, or are you raising here an argument about why the documents should have been admitted? Actually, I'm not raising it at all. I'm just noting that for purposes of her claim, the judge, in fact, found that her claim for Fallon Golan in and of itself, without the other things, was not refuted. So with or without the documents, the judge's decision, basically states her Fallon Golan claim as it was presented was credible by itself. It says stop here. Do you have any other questions? Good morning again, Your Honors. Carmel Morgan on behalf of the Respondent. There are actually three separate issues in this case. The first is the discretionary denial of asylum. The second, the adverse credibility determination. And the third, the frivolousness finding. The discretionary denial of asylum, though, doesn't resolve the case. Is that right? It only resolves the case as to asylum. You're correct that it doesn't reach withholding and CAT. The material element or heart of the claim rule implicates both the frivolousness finding and the adverse credibility---- Are those the same? No, I'm not arguing that they're the same. Okay. They're somewhat similar. So, I mean, technically, we could, and I'm saying this hypothetically, we could conclude that the adverse credibility is supported and her, the motive coming up in her lies did go to the heart of the claim. And we could conclude that and find support that the IJ's finding was supported. But then we could move from there and say that under the Kodka v. Holder, the recent case, that out of the Ninth Circuit, where it's fairly similar factually with a liar and a claim, we could say that her lying didn't go to whether the Falun Gong, the frivolousness of the Falun Gong claim. And that wouldn't be, that would not be inconsistent necessarily. If you follow Kodka, you're absolutely correct. That's not the result the Respondent would have you reach, of course. Right. But it could, but so why doesn't Kodka, you know, how would you distinguish that from the facts here? Because I'm only speaking for myself, but, you know, it certainly seemed that there was pretty significant evidence of her lying and a good argument that it would go to the heart of the claim. But in terms of the frivolousness, it seems like a lot of the cases where those have been upheld that, you know, you have admissions that the whole claim is false. Here we don't really know whether the Falun, you know, we know that she lied about whether she was married and that that was a good reason not to believe it, but we don't really know too much about whether the whole Falun Gong claim is, if that's all made up or whatever. You're correct. We don't know, but the immigration judge is entitled to use circumstantial evidence, and certainly the circumstantial evidence here would point to the fact that she cannot be considered a refugee because her motive for leaving China is certainly undermined by her confessed lies in this case. So her motivation for fleeing, which is essential to whether or not you are a refugee. I agree with you on a logical level. You know, sort of once a liar, always a liar, and you don't get to parse that out. But CADCA seems to parse it out on some level. CADCA does have a discussion about materiality and what material element means. I would have the Court look to the materiality, but then there's element. Yes. My question is, here, the lie didn't seem to be to have anything directly to do. It only had inferentially to do, at best, with an element of the asylum claim. If you look at the implementing regulation for a frivolousness finding, which is in 8 CFR 1208.20, it talks both about an asylum application and then aspects of the claim. But I think if you use the language asylum application, certainly whether or not she was married is material to that, because why? Well, because if she was not, in fact, married, she could not have her husband – she could not petition for her husband as a refugee. And this leads me to another question, which is, when I'm finished with my observation, I'd like you to explain to me on some specific basis why her lies, which, as I said, were not limited to I was married or I wasn't married, went to the heart of the claim. And my observation is simply that the question of whether she was married – if, for example, she had simply said in her application I was married when she wasn't married, and there was nothing else that ensued. There wasn't the whole – the issue about her husband's fraudulent marriage and her involvement in the fraudulent marriage and her living with him when she said she wasn't living with him and her coming here with him when she said she didn't come here with him, and what amounts to a fair amount of evidence of some sort of scheme, but there was just a – if it was only what she originally said it was, i.e., she said she was married, she wasn't married, and she said it because later on she wanted to try to petition, would that go to the heart of the claim? I think it still goes to the heart of your claim, Your Honor. Why? Not only does it go to her motivation for fleeing China, but she says in her asylum application more than once my husband paid the fine for me to be released from jail, and my husband informed me that the official – Well, it was part of her larger story. Yes. I was trying to extract just the lie about whether she was married or not and to say whether that went to the heart of the claim. They don't like you to go on and say if not, and I think maybe not, why then with everything else that happened does it go to the heart of the claim? I'm not sure I understand the question. Well, my question is, first of all, if the only lie had been that she checked off the box married when she wasn't married, would that go to the heart of the claim? I don't know because the immigration judge and board didn't reach that decision. Okay. I know they didn't. I'm asking you as a lawyer for the government. I was once in the United States Supreme Court when someone asked Justice Rehnquist asked a lawyer that who refused to answer because his principles hadn't said, and he said, but you're an officer of the court, you answer it. I think the best answer, Judge Berzon, is that it all depends on the facts of a particular case, certainly not under the facts of this case. All right. So then taking the facts of this case, can you articulate with some specificity why it goes to the heart of the question of whether or not she was in fact entitled to asylum as a Falun Gong practitioner when the IJ said that just on the face of her story about the Falun Gong, she seemed to be credible? Well, he certainly didn't find her credible. He just said she seemed to be. He didn't find her credible because of the fact that when she was lying, she totally changed demeanor and you could tell she was lying. That's correct, Your Honor. Certainly. Because he compared it with her credibility when she was telling the truth. That's right. As to the adverse credibility determination, the demeanor finder, this Court has said multiple times, deserves special deference. And it's true that the immigration judge found that her testimony became more rapid, that she avoided questions. Right. So that was a good way to tell when she was not telling the truth, when she talked about the problems about her husband. And he found that by comparing it with how credible she seemed when she was talking about the Falun Gong problem. I would agree with you, Your Honor. That's correct. So the question is how, given our heart of the claim jurisprudence, which has now been overruled by the Real ID Act but we're not there, how does this go to the heart of the claim? It's a lie. It's a series of lies. She was not credible with respect to a bunch of things, and I don't think we'd have any problem upholding those things. How does it go to the heart of the claim? It goes to her motivation for fleeing China. If she was involved in a scheme with her husband, each trying to petition for the other, arguably her reason for leaving China was not Falun Gong persecution. She also said as part of her ---- Unless why is it that you don't have two motives, which you're clearly allowed to have, one to flee the Falun Gong and another to keep your family together, and you lied about that when you were persecuted and came to the United States seeking asylum, you lied about your family so that you could keep them together, which was your other objective? How does a lie about the second objective undermine the fact that you want to come because you've been persecuted? I actually agree with you, Your Honor, that in a different case you might be able to have dual motives. That simply isn't the facts that are before us. As you mentioned earlier in the discussion with the Petitioners' Council, she had many opportunities to correct her lies, and yet she lied and lied and lied again. And when you have someone that lies under oath to the Federal Government, it throws their entire credibility into question. But that's the problem is that that isn't our case law. That's the problem. So the question is, you know, this seems like a lot bigger lie than the ones in our cases in which we've said that they don't go to the heart of the claim. Is that the difference, that little lies don't go to the heart of the claim, that don't go to the heart of the claim don't count, but big lies that don't go to the heart of the claim do count, or does it go to the heart of the claim? I think it both goes to the heart of the claim, but you could certainly look at your Ninth Circuit case law and distinguish it. The lies here were deliberate. They were not trivial or typographical errors. There's no allegation that there were problems with translation. There actually are no allegations about unscrupulous counsel or that she was under duress. This is not a case where she lied to escape her country because she was already safely here when she perpetuated the lie. So I would say all of those things don't go to the heart of the claim. If you're a liar, as Ms. Callahan said, if you're a real liar, it goes to everything. In this case, I agree. There's a maxim, falsus in uno, falsus in omnibus. And given the nature of the lie in this case, I think that's true. We simply don't know what to believe. I mean, I don't quite understand why lies that are all designed, if you have a claim to persecution, why lies that are all designed to bring your husband and children with you affect the question of whether you've been persecuted? Why does it go to the heart of that question? It just seems to me that there's an argument, a good argument, that there are two separate types of laws which don't have anything to do with undermining whether you were persecuted. Well, this isn't a lie about a trivial matter. No, no, not a trivial matter. I said about keeping your family together and having them come with you, since we understand family values. I can appreciate the fact that they are a whole series of lies to the government and that that is not something we encourage. But I'm vividly seeing why they go to the... I suppose you agreed that she actually was persecuted. Do you think that she wouldn't have told those same lies in an effort to get her family here? I really don't know. If she, in fact, had been persecuted, I still would uphold the decision of the denial and the exercise of discretion. Yeah. Yes. Now, that I understand. But I'm trying to see why you believe that those lies go to the heart of the claim. Not only do they go to her motivation, which is key for determining whether someone is a refugee, but she also says in her asylum application that her husband is the one who bailed her out of jail and her husband is the one who warned her that the officials had come after her when she didn't report. It would appear that that's not the case, or at least she's saying now it wasn't, in fact, her husband. It was her ex-husband. So she's made it material to her claim by drawing him into it. It's the same person, isn't it? Her husband and her ex-husband are the same person? Yes. Do you know there's a case which no one cited in this case of ours called Alharbi? I don't know whether you know the case. But essentially what happened there was it was somebody who was fleeing from Iraq after the first Iraq war. And we found that he lied about everything that happened to him before. He was just a complete liar about everything that happened to him. And, in fact, he admitted he was a liar. But nonetheless, he had a well-founded fear of persecution once he came here, because he was likely to be persecuted by Saddam's government should he return. Now, why would that be possibly true here? The record evidence just doesn't support that, Your Honor, that in the case of this Petitioner, someone in her position would necessarily face more punishment in China. Well, if you don't believe that she was actually a fallen gun person. But she could have been a fallen gun person and a person who was involved in the scheme with her husband. She could have been. Could have been. I don't think the record compels that conclusion. Okay. It looks like we've taken you 50 percent over your time. If there are no further questions, we ask that you deny the petition. I mean, in your defense, you didn't ask to be her that much longer. That's correct. We compelled it. Thank you, Your Honor. One last question. You agree that the issue of the exclusion of the documents isn't before us? That seems extremely weird to me, frankly, that he just cut off and wouldn't even take the documents. And it would be informative to know, in fact, in judging her ultimate credibility, whether these were valid documents. I mean, if it turned out they were valid documents, it would be awfully difficult to say that she was actually lying. I agree the issue is not before the panel. I would like to make an observation that neither the immigration judge or the board relied upon. But if you look at the date stamp of the letter and the return address, it appears to be that of her husband in China. And it's dated October 28, 2002. But we have a lease. We know he came in July. That's correct. He couldn't have sent that to her. Thank you. Thank you. I have nothing further to add. If the Court has any other questions for me. Thank you, Counsel. The case just argued will be submitted.
judges: Reinhardt, Berzon, Callahan